UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MARY A. COLON-TORRES,**

                Plaintiff,                6:12-cv-1591
                                                (GLS)

           v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:**<br>Stanley Law Offices<br>215 Burnet Avenue<br>Syracuse, NY 13203 | JAYA A. SHURTLIFF, ESQ. |
| Law Offices of Kenneth Hiller, PLLC<br>6000 North Bailey Avenue - Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ. |
| **FOR THE DEFENDANT:**<br>HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | KATRINA M. LEDERER<br>Special Assistant U.S. Attorney |
| Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Mary A. Colon-Torres challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Colon-Torres' arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On February 23, 2009, Colon-Torres filed an application for SSI under the Social Security Act ("the Act"), alleging disability since October 10, 1995. (Tr.[1] at 60, 135-41.) After her application was denied, (*id.* at 61-64), Colon-Torres requested a hearing before an Administrative Law Judge (ALJ), which was held on December 1, 2010, (*id.* at 41-59, 65-67). On January 21, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final decision upon

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-4, 25-40.)

Colon-Torres commenced the present action by filing her complaint on October 24, 2012 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 9, 10.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 12, 13.)

## III. Contentions

Colon-Torres contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 12 at 6-11.) Specifically, Colon-Torres claims that the ALJ: (1) failed to fully develop the record; (2) rendered a residual functional capacity (RFC) determination that is unsupported by substantial evidence and internally inconsistent; and (3) failed to consult with a vocational expert (VE) in making her step five determination. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 13 at 5-9.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt.

3

No. 12 at 3-5; Dkt. No. 13 at 1.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Duty to Develop the Record

Colon-Torres argues first that the ALJ violated her duty to develop the record with regard to listing 12.05, by failing to order an IQ examination. (Dkt. No. 12 at 6-8.) The Commissioner counters that an intelligence exam was not necessary because, in the absence of such an exam, the record was sufficient for the ALJ to render a determination about Colon-Torres' mental functional capacity. (Dkt. No. 13 at 5-6.) The court

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) of Title 42 applicable to judicial review of SSI claims.

4

agrees with the Commissioner.

Listing 12.05 pertains to mental retardation, which "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age [twenty-two]." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05. To satisfy listing 12.05(B), a claimant must demonstrate a valid verbal, performance, or full scale IQ of fifty-nine or less. *Id.* § 12.05(B). To satisfy listing 12.05(C) or (D) a claimant must demonstrate, among other things, a valid verbal, performance, or full scale IQ of sixty through seventy. *Id.* § 12.05(C)-(D).

In this case, the ALJ had before her intelligence testing conducted in September 1995, on which Colon-Torres received a verbal score of seventy-five, a performance score of eighty-four, and a full scale score of seventy-eight. (Tr. at 300.) The ALJ considered these scores and noted that they are too high to satisfy the requirements of listing 12.05. (*Id.* at 32.) Colon-Torres correctly points out that these scores are stale because 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00(D)(10) limits the validity of IQ test results obtained between ages seven and sixteen to two years when the score is 40 or above.[3] (Dkt. No. 12 at 7); *see LaRock ex rel. M.K. v.*

---

[3] Colon-Torres was fifteen at the time of the September 1995 evaluation. (Tr. at 135.)

*Astrue*, No. 10-CV-1019, 2011 WL 1882292, at *5 (N.D.N.Y. Apr. 29, 2011) (holding that the operative date in evaluating qualification for benefits is that of application).

The ALJ also considered education records which she stated contained a January 2000 evaluation on which Colon-Torres scored a forty-four verbal IQ, a fifty-four performance IQ, and a forty-four full scale IQ. (Tr. at 32.) The ALJ discounted these scores because the psychologist who administered the exam and evaluated Colon-Torres "concluded that she was exhibiting significant drug withdrawal symptoms at that time" and "diagnosed her with a substance induced mood disorder." (*Id.*) However, because they are illegible, the court cannot read the education records cited by the ALJ. (*Id.* at 32, 167-68.) In any event, the parties do not dispute the results of the testing or the validity of those scores. Rather, Colon-Torres argues that, because the ALJ found her January 2000 scores invalid and her September 1995 scores were stale, the ALJ should have ordered additional IQ testing. (Dkt. No. 12 at 7.) She further argues that because physician Nikita Dave, who performed an internal medicine consultative examination, suggested that an intelligence evaluation be performed, the ALJ should have ordered IQ testing. (*Id.*; Tr.

6

at 270-71.)

While the ALJ has an affirmative obligation to develop the administrative record, her duty to do so is not without limit. *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make her determination based upon that evidence. *See* 20 C.F.R. § 416.920b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Moreover, the ALJ is afforded discretion in determining whether a consultative intelligence exam is warranted. *See* 20 C.F.R. § 416.919a. As with development of the record generally, "[a] consultative examination is unnecessary if the record contains sufficient information on which to base the decision." *Hall ex rel. M.M. v. Astrue*, No. 11-CV-6317T, 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012).

Here, consultative examiner Kristen Barry examined Colon-Torres in June 2009. (Tr. at 263-67.) Upon examination, Colon-Torres displayed adequate social skills, normal motor behavior, appropriate eye contact,

7

fluent and clear speech, and coherent and goal directed thought processes. (*Id.* at 264-65.) Her mood was relaxed and calm, affect was full and appropriate, attention and concentration grossly intact, and recent and remote memory skills intact. (*Id.* at 265.) Colon-Torres reported that she is able to care for her personal hygiene, cook, clean, do laundry, and shop, but not manage money. (*Id.*) Dr. Barry estimated her intellectual functioning to be in the borderline range and opined that Colon-Torres is able to follow and understand simple directions and instructions, but may have difficulty performing complex tasks independently. (*Id.* at 266.) Thereafter, psychological consultant M. Totin reviewed Colon-Torres' medical records, including Dr. Barry's report, and opined that she can do simple work in a low contact setting. (*Id.* at 283-96.) These opinions provided the ALJ substantial evidence to gauge Colon-Torres' mental limitations. *See Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

Colon-Torres cites to *Major v. Astrue*, 12-CV-304S, 2013 WL 2296306 (W.D.N.Y. May 24, 2013), to support her argument that an IQ

8

examination was necessary. (Dkt. No. 12 at 7.) In that case, the court held that remand was warranted where two treating psychologists opined that a "'comprehensive neuropsychological evaluation' was necessary to obtain objective data for identifying 'the pattern and severity' of [the claimant's] cognitive impairments." *Major*, 2013 WL 2296306 at *3-4. The court concluded that the psychologists rendered no final opinions as to the claimant's mental limitations and the ALJ improperly substituted his own judgment for competent medical opinion. *Id.* at *4. Unlike *Major*, here, Drs. Barry and Totin did not indicate that further testing was required to assess Colon-Torres' limitations, but, rather, opined that she was capable of performing simple work. (Tr. at 267, 295.)

Ultimately, as the ALJ had before her substantial evidence that enabled her to render a decision with respect to Colon-Torres' mental impairments, the court is satisfied that further development of the record was unnecessary. *See Hall ex rel. M.M.*, 2012 WL 2120613, at *4.

**B. <u>RFC Determination</u>**

Next, Colon-Torres claims that the RFC determination is infirm because the ALJ inconsistently found that she could "[d]eal with changes in a routine work setting," and perform "routine daily tasks and duties which

9

do not significantly change in pace or location on a daily basis." (Dkt. No. 12 at 8-9.) Further, according to Colon-Torres, the ALJ erred in failing to obtain a treating source opinion or advising her that one was needed. (*Id.* at 9-10.) The court disagrees.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence[4] in the record. *See Frye ex rel. A.O. v. Astrue*, No. 11-1585-cv, 2012 WL 2125910, at *2 (2d. Cir. June 13, 2012). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

First, the court notes that the absence of a medical source statement from a treating physician will not, by itself, make the record incomplete. 20 C.F.R. § 416.913(b)(6); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013). Here, the ALJ had the opinions of Drs. Barry and Totin to rely on,

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

10

and their opinions support the ALJ's assessment of Colon-Torres' RFC. (Tr. at 266, 295.) The record also contains a December 2010 assessment conducted by certified alcohol and substance abuse counselor Nancy Deangells. (*Id.* at 331-34.) Upon examination, Colon-Torres was attentive, engaging, motivated, and pleasant with appropriate motor behavior, an euthymic mood, and clear speech. (*Id.* at 331.) Although Colon-Torres had a hard time staying focused during the exam, her perceptions were appropriate and thought process were coherent and logical. (*Id.* at 332.) Deangells noted that Colon-Torres "has been unable to maintain employment due to panic symptoms." (*Id.* at 333.) Colon-Torres argues that this is an opinion from a treating source, which the ALJ failed to address. (Dkt. No. 12 at 9.) However, Deangells was completing a social history of Colon-Torres, as part of her examination, when she noted her employment status. (Tr. at 332-33.) Thus, this note indicates Colon-Torres explanation of her employment status, and not an opinion as to Colon-Torres' ability to perform the basic mental demands of work. Moreover, the ALJ explicitly considered the Global Assessment of Functioning (GAF) score of sixty, which Deangells assigned Colon-Torres.

11

(*Id.* at 33, 334.)[5]  A score of sixty indicates only moderate symptoms or moderate difficulty in social, occupational, or school functioning.  (*Id.*)

Turning to the alleged internal inconsistency of Colon-Torres' RFC, the ALJ's determination that Colon-Torres could "perform work in low stress environments, meaning routine daily tasks and duties which are not fast-paced and which do not significantly change in pace or location on a daily basis" is consistent with a finding that she could deal with changes in a routine work setting.  (Tr. at 32.)  Here, the ALJ was fulfilling her duty to set forth with sufficient specificity the crucial factors in making her RFC determination.  *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (explaining that such specificity is necessary to enable the court to decide whether the determination is supported by substantial evidence).  Thus, the ALJ made clear that, although Colon-Torres' ability to respond to the demands of work limits her to performing low stress jobs, she retains the ability to perform the basic mental demands of unskilled work. *See* SSR 85-15, 1985 WL 56857, at *5-6 (1985) (explaining that the skill level of a position is not necessarily related to the difficulty an individual will have in

---

[5] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004).

12

meeting the demands or "stress"of the job). As the Commissioner points out, the basic demands of unskilled work require only an ability to deal with changes in a *routine* work setting. (Dkt. No. 13 at 7); *see Howe v. Colvin,* No. 12 Civ. 6955, 2013 WL 4534940. Indeed, this court and other district courts in this Circuit have held that limiting a claimant to low stress environments would not prevent them from performing unskilled work. *See Howe v. Colvin*, No. 12 Civ. 6955, 2013 WL 4534940, at *18 (S.D.N.Y. Aug. 27, 2013) (holding that a claimant's limitation to simple, routine, and repetitive tasks in a low stress environment had little or no effect on the occupational base of unskilled sedentary work); *Webb v. Astrue*, No. 3:11-CV-94, 2012 WL 589660, at *6 (N.D.N.Y. Feb. 22, 2012) (holding that the ALJ did not err in determining that the claimant was able to meet the demands of unskilled work where the RFC determination included "reasonable avoidance of unusually high stress or danger work, i.e., doing routine daily tasks and duties which are not too fast-paced and which do not significantly change in pace or location on a daily basis, and which does not require more than occasional contact with supervisors, co-workers, or the general public").

### C. Vocational Expert Testimony

Lastly, Colon-Torres asserts that the ALJ should have consulted a VE because her "mental impairments are non-exertional and result in more than 'negligible' limitations." (Dkt. No. 12 at 10-11.) Again, the court disagrees.

In making a step-five ruling where the claimant suffers solely from a nonexertional impairment, the ALJ must consider: (1) the RFC reflecting such nonexertional impairment and its limiting effects on the availability of other work; and (2) the claimant's age, education, and work experience. *See* SSR 85-15, 1985 WL 56857, at *2-3. Those medical and vocational factors must be analyzed under the framework set out in the Medical-Vocational Guidelines § 204.00. *See id*. Although "[t]he assistance of a vocational resource may be helpful," and, in some cases, necessary, SSR 85-15 does not require that the ALJ always call upon the services of a VE. *Id.* at *3. The ultimate inquiry in a case such as this one is whether the claimant can perform unskilled work. *See id.* at *4.

Here, the ALJ concluded that Colon-Torres could meet the basic demands of unskilled work despite her nonexertional limitations. (Tr. at 35.) As discussed above, this conclusion is supported by substantial evidence. *See supra* Part VI.B. That finding obviated the need to consult

14

with a VE.  *See generally* SSR 85-15, 1985 WL 56857, at *3-4.

**D.     Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Colon-Torres' complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 27, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court